PILLSBURY WINTHROP SHAW PITTMAN LLP
CAROLYN S. TOTO (SBN 233825)
carolyn.toto@pillsburylaw.com
JEFFREY D. WEXLER (SBN 132256)
jeffrey.wexler@pillsburylaw.com
JON JEKEL (SBN 298646)
jon.jekel@pillsburylaw.com
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017-5524
Telephone:  213.488.7100
Facsimile: 213.629.1033

Attorneys for Plaintiff
APPLIED LACQUER INDUSTRIES INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| APPLIED LACQUER INDUSTRIES INC. d/b/a APRÉS NAIL, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>21 SWEET BEAUTY INC., a California corporation; NAIL UP INC., a California corporation; NAILS-X INC., a California corporation; X NAIL SUPPLY INC., a California corporation; TONY TUAN DUONG, an individual; and DOES 1–10, inclusive,<br><br>Defendants. | Case No. 8:25-cv-02331<br><br>**COMPLAINT FOR:**<br><br>1. REGISTERED TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114<br><br>2. UNREGISTERED TRADEMARK INFRINGEMENT / FALSE ASSOCIATION, 15 U.S.C. § 1125(a)(1)(A)<br><br>3. TRADEMARK COUNTERFEITING, 15 U.S.C. §§ 1116(d), 1117(b)<br><br>4. SECONDARY TRADEMARK INFRINGEMENT<br><br>5. UNFAIR COMPETITION, CAL. BUS. & PROF. CODE §§ 17200 *et seq.*<br><br>6. COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION |

4934-5944-7663

7.  FALSE ADVERTISING, 15 U.S.C. § 1125(a)(1)(B)

8.  FALSE ADVERTISING, BUS. & PROF. CODE §§ 17500 *et seq.*

9.  CIVIL CONSPIRACY

10. CANCELLATION OF TRADEMARK REGISTRATION, 15 U.S.C. § 1119

**<u>DEMAND FOR JURY TRIAL</u>**

This is a civil action seeking monetary damages and preliminary and permanent injunctive relief under federal and state law arising out of Defendants' willful trademark infringement, trade dress infringement, counterfeiting, false advertising, unfair competition, and related misconduct. Plaintiff Applied Lacquer Industries Inc. d/b/a Aprés Nail ("**Aprés Nail**") alleges as follows:

**JURISDICTION AND VENUE**

1.      This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121 over Aprés Nail's federal-law claims because this action arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* The Court has jurisdiction pursuant to 28 U.S.C. § 1338(b) over Aprés Nail's state-law claims because they are joined with substantial and related claims under the trademark laws. The Court also has supplemental jurisdiction over those state-law claims under 28 U.S.C. § 1367.

2.      This Court has personal jurisdiction over each Defendant because each resides in this District or has purposefully directed the acts complained of to this District, and a substantial part of the events giving rise to these claims occurred here. In addition, Defendants have purposefully availed themselves of the benefits of doing business within California and the Central District by, among other things, directing their infringing conduct to this District through websites (21SweetBeauty.com, Nails-X.com, and XNailSupply.com).

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events giving rise to Aprés Nail's claims occurred here.

4.      Assignment to the Southern Division is proper because at least one Defendant lives in Orange County and a substantial part of the events occurred there.

## THE PARTIES

5.      Plaintiff Aprés Nail is a California corporation with its principal place of business located at 16839 Gale Avenue, City of Industry, CA 91745.

6.      On information and belief, Defendant 21 Sweet Beauty Inc. ("**21 Sweet**") is a California corporation with its principal place of business located at 9142 La Grand Ave., Garden Grove, CA 92841.

7.      On information and belief, Defendant Nail Up Inc. ("**Nail Up**") is a California corporation with its principal place of business located at 14382 Hoover Street, Unit A5, Westminster, CA 92683.

8.      On information and belief, Defendant Nails-X Inc. ("**Nails-X**") is a California corporation with its principal place of business located at 9142 La Grand Ave., Garden Grove, CA 92841.

9.      On information and belief, Defendant X Nail Supply Inc. ("**XNS**") is a California corporation with its principal place of business at 14382 Hoover Street, Unit A5, Westminster, CA 92683.

10.     On information and belief, Defendant Tony Tuan Duong is a California resident living in Garden Grove, California, and was, at all times relevant hereto, an owner and officer of Defendants 21 Sweet, Nail Up, Nails-X, and XNS (collectively, the "**Corporate Defendants**").

11.     Defendants sued as DOES 1 through 10 are persons or entities whose identities Aprés Nail does not yet know. Aprés Nail will seek leave of Court to substitute their true names when they become known.

4934-5944-7663

## ALTER EGO ALLEGATIONS

12.    On information and belief, each Defendant acted as the agent, partner, alter ego, and co-conspirator of the others, and all infringing acts alleged herein were done with the knowledge, consent, approval, and ratification of each other.

13.    On information and belief, there exists such a unity of interest and ownership between Duong and each of the Corporate Defendants that the individuality and separateness of each Defendant has ceased to exist.

14.    On information and belief, the Corporate Defendants are, and at all relevant times were, inadequately capitalized, underfunded, and operated without adequate observance of corporate formalities, and they were used by Duong as mere shells and instrumentalities for his own benefit.

15.    On information and belief, Duong personally directed, controlled, and benefitted from the wrongful acts of each Corporate Defendant, including:

a.    Filing and prosecuting trademark applications for infringing trademarks in his own personal name;

b.    Controlling the design and content of infringing websites, including 21SweetBeauty.com and XNailSupply.com, which embedded one or more Aprés Marks in their HTML source code to manipulate web search results; and

c.    Soliciting Aprés Nail's distributors by sending personal text messages and videos to purchase infringing goods.

16.    Duong's control and misuse of the Corporate Defendants, if the acts are treated as those of the corporations alone, would sanction fraud and promote injustice.

17.    Accordingly, the Court should hold Defendants jointly and severally liable for all unlawful acts alleged herein.

4934-5944-7663

# FACTUAL BACKGROUND

### A.    Aprés Nail's Business and Trademark Rights

18.    Aprés Nail is a pioneer in the professional nail enhancement industry. Since launching its GEL-X® nail extension system in 2015, Aprés Nail has become an industry leader in innovative nail extension methods and associated nail products. Its products are sold to salons, distributors, and consumers throughout the United States and internationally. Aprés Nail's products have been widely publicized in trade journals, beauty magazines, and across social media, earning strong recognition and goodwill. Numerous celebrities have worn Aprés Nail products, including at high-profile, highly publicized events like the Oscars and its after-party events.

19.    Aprés Nail has invested substantial resources in developing its intellectual property portfolio, which includes numerous registered trademarks in the U.S. and abroad.  In the U.S., Aprés Nail has numerous federally registered trademarks on the Principal Register of the USPTO (collectively, the "**Aprés Registrations**"). These registrations include, without limitation:

        a.    APRÉS (U.S. Reg. No. 5,696,715), registered Mar. 12, 2019, for Class 3 goods;

        b.    APRÉS (U.S. Reg. No. 6,028,758), registered Apr. 7, 2020, for Class 3 goods;

        c.    APRÉS (U.S. Reg. No. 7,578,603), registered Nov. 26, 2024, for Class 35 services;

        d.    BRUSH-X (U.S. Reg. No. 7,795,905), registered May 13, 2025, for Class 3 goods;

        e.    EXTEND GEL (U.S. Reg. No. 7,251,901), registered Dec. 26, 2023, for Class 3 goods;

        f.    GEL-X (stylized) (U.S. Reg. No. 5,885,006), registered Oct. 15, 2019, for Class 3 goods;

5

g.    GEL-X (U.S. Reg. No. 7,578,601), registered Nov. 26, 2024, for Class 35 services;

h.    GEL-X (U.S. Reg. No. 7,877,431), registered Aug. 5, 2025, for Class 3 goods;

i.    GEL-X (stylized) (U.S. Reg. No. 7,895,809), registered Aug. 19, 2025, for Class 3 goods;

j.    GEL-X PREP (U.S. Reg. No. 7,877,393), registered Aug. 5, 2025, for Class 3 goods;

k.    MANIPEDI BY APRÉS (U.S. Reg. Nos. 6,261,169; 6,261,176), both registered Feb. 2, 2021, for Class 3 goods.

l.    MANIPEDI BY APRÉS (stylized) (U.S. Reg. No. 6,261,174), registered Feb. 2, 2021, for Class 3 goods; and

m.    PH BONDER (U.S. Reg. No. 7,070,409), registered May 30, 2023, for Class 3 goods.

20.    Aprés Nail also owns multiple pending applications for additional related trademarks (collectively, the "**Aprés Applications**"), including:

a.    APRÉS (U.S. Serial No. 97581405), filed Sep. 7, 2022, for Class 3 goods;

b.    APRÉS (stylized) (U.S. Serial Nos. 97462286; 97581389), filed Jun. 16, 2022, and Sep. 7, 2022, for Class 3 goods;

c.    GEL-X (stylized) (U.S. Serial Nos. 97581336; 97581367), filed Sep. 7, 2022, for Class 3 goods;

d.    FRENCH GEL-X (U.S. Serial No. 97719150), filed Dec. 15, 2022, for Class 3 goods;

e.    MANIPEDI BY APRÉS (U.S. Serial No. 97581434), filed Sep. 7, 2022, for Class 3 goods;

f.    OVERLAY GEL-X (U.S. Serial No. 99397465), filed Sep. 17, 2022, for Class 3 goods; and

6

g.     POWERED BY APRÉS (stylized) (U.S. Serial No. 97399131), filed May 6, 2022 for Class 3 goods and Class 40 services.

21.    In addition to its rights in the Aprés Registrations and the Aprés Applications, Aprés Nail owns common law (unregistered) trademark rights in the marks listed above, as well as various other word marks, slogans, designs, and trade dress (collectively, the "**Aprés Common Law Marks**"), including:

a.     The APRÉS NAIL word mark;

b.     The GEL COULEUR word mark;

c.     The Aprés Nail Gel-X packaging trade dress;

d.     The gold color of Aprés Nail's EXTEND GEL packaging;

e.     The slogan "The Tips that Revolutionized the Industry";

f.     The slogan "Upgrade the Experience. Upgrade to Gel-X"; and

g.     The overall look and feel of Aprés Nail's products and website.

22.    Each of the above Aprés Common Law Marks is inherently distinctive or has attained secondary meaning among relevant consumers due to Aprés Nail's extensive marketing, promotion, and sales of its goods and services.

23.    For convenience, the Aprés Registrations, Aprés Applications, and Aprés Common Law Marks are referred to collectively as the "**Aprés Marks**."

24.    Through years of exclusive and continuous use, the Aprés Marks have developed substantial goodwill and are recognized by consumers, salons, and distributors nationwide and internationally as exclusively designating Aprés Nail as the source of premium, professional-quality nail products.

25.    Because of Aprés Nail's industry leadership, extensive portfolio, and strong consumer recognition, the Aprés Marks are closely associated with Aprés Nail by consumers, salons, distributors, and professionals. The strength of Aprés Nail's rights is such that even subtle imitation creates a likelihood of confusion.

7

4934-5944-7663

**B.**    **Defendants' Infringing Conduct**

26.    Defendants operate and control multiple interrelated companies, all of which are located in or around Orange County, California. The Corporate Defendants operate as a unified enterprise under Duong's direction and are used interchangeably to market, sell, and distribute Defendants' goods.

27.    In 2024, Defendants launched competing product lines that deliberately mimic and copy Aprés Nail's trademarks, trade dress, and brand identity.

28.    Defendants have marketed and sold infringing nail products under designations such as NAILS-X, NAIL-X, TIPS-X, GEL-UP, EXTEND GLUE, and EXTEND BUILDER, as well as by using Aprés Nail's identical PH BONDER® mark. These designations are confusingly similar to the Aprés Marks and were chosen deliberately to trade on Aprés Nail's goodwill and reputation.

29.    Defendants also copied Aprés Nail's trade dress, including the gold EXTEND GEL® bottle and GEL-X® kit packaging, replicating their layout, color scheme, and labeling to confuse consumers into believing they were purchasing genuine Aprés Nail products.

30.    Defendants also copied the look, feel, and content of Aprés Nail's website, including taglines such as THE TIPS THAT REVOLUTIONIZED THE INDUSTRY, UPGRADE THE EXPERIENCE, and IN THE SPOTLIGHT.

31.    In addition, Defendants copied the streaming ticker at the bottom of Aprés Nail's website with the header "IN THE SPOTLIGHT;" using similar photos of models and celebrities and tagging those photos with @21SweetBeauty instead of @APRESNAILOFFICIAL. Yet, the ticker on the 21SweetBeauty.com website has a key difference as compared to the ticker on Aprés Nail's website, further evidencing Defendants' intentional acts to mislead consumers. When you click on "view posts" for the photos on Aprés Nail's ticker, it takes you to actual social media posts showing well-known celebrities and public figures wearing Aprés Nail's products. In contrast,

when you click on "view posts" for the photos on Defendant's ticker, it simply redirects you to the 21SweetBeauty.com home page, which is misleading and false.

Ticker on Aprés Nail Website



Ticker on 21SweetBeauty.com



32.    Defendants also appear to have made unauthorized copies of photographs and graphics from Aprés Nail's website and used them to create derivative works based on Aprés Nail's original visual marketing assets—without Aprés Nail's permission—to advertise Defendants' competing products. Specifically, Defendants appear to have reproduced Aprés Nail's visual marketing materials and used generative artificial intelligence tools, such as DALL·E, to create substantially similar images. For example, below are two original Aprés Nail website images shown alongside AI-generated reproductions displayed on the 21 Sweet Beauty website:

4934-5944-7663

| Image from Aprés Nail's Website | Gen-AI Image on 21 Sweet Website |



33.    In some instances, the images on Defendants' websites may appear visually distinct from the original images on Aprés Nail's website. Yet, they have clear indicia of copying from Aprés Nail. For example, the screenshot below shows a promotional banner from Aprés Nail's website for its "Neutrals GEL-X® Kit" with two "sparks"—a signature Aprés Nail design element—on the right side.

10



34.    The screenshot below shows a similar banner that appeared on the 21 Sweet website shortly after Aprés Nail announced its new product, which contains the exact same "sparks" on the right side. This suggests that Defendants reproduced Aprés Nail's image and created a derivative work based on it—all without Aprés Nail's authorization. Again, this conduct demonstrates a pattern of intentional copying of Aprés Nail's intellectual property and assets by Defendants to falsely associate themselves with Aprés Nail and to trade off of Aprés Nail's reputation and goodwill.



35.    Moreover, Defendants embedded Aprés Marks into their websites to divert consumers away from Aprés Nail. For example, the 21 Sweet website features

11

the APRÉS NAIL mark as the title descriptor, resulting in the site being listed as follows in Google search results:



36.     This intentional misuse of Aprés Nail's name in metadata and page headers was intended and designed to deceive consumers into believing Defendants' website was Aprés Nail's official site or was otherwise affiliated with Aprés Nail.

37.     The HTML source code for Defendants' websites located at 21SweetBeauty.com and XNailSupply.com evidences that Defendants have programmed their websites with code featuring:

      a.     The APRÉS NAIL word mark;

      b.     The GEL-X word mark;

      c.     Aprés Nail's Instagram username @AprésNailOfficial; and

      d.     Various other Aprés Marks.

38.     To the extent there is any doubt, the HTML source code confirms that Defendants' infringement is willful, given that Defendants are apparently deeply familiar with the Aprés Nail and Aprés Marks, including the Aprés Common Law Marks. For example, the HTML source code for the 21 Sweet website features references to well-known companies and influencers that have collaborated with Aprés Nail—and, critically, not Defendants—including Chaun Legend, Jenny Bui, Ryo Kitamura, Rie Nofuji, Insatiable & Yesica, and Nail Labo Presto.

39.     Further, the screenshot shown below shows that the HTML source code for the 21 Sweet website describes the phrase "UPGRADE THE EXPERIENCE" as a "slogan apres-slogan."

```
3599  <div class="index-shop__slogan apres-slogan aos-init aos
      animate" data-aos="fade-up"> UP GRADE THE EXPERIE
      </div>
```

4934-5944-7663

40. Defendants distribute their infringing products both directly to consumers and through wholesale channels targeting salons and beauty supply retailers. Their websites prominently display infringing goods for sale, often at discounted prices to undercut Aprés Nail and to mislead consumers.

41. On information and belief, Defendants also solicited Aprés Nail's authorized distributors directly, including via text messages personally sent by Duong, including a video of Duong himself pitching infringing goods and falsely suggesting equivalence to Aprés Nail's products.

42. On information and belief, Duong is the driving force behind the Corporate Defendants' operations. On information and belief, Duong personally oversees product development, marketing, and the filing of trademark applications for infringing marks, and the infringing acts of each of the Corporate Defendants were carried out at Duong's direction and for his personal benefit.

**C.     Aprés Nail's Communications with Defendants**

43. On April 12, 2024, Duong filed applications to register the marks TIPS-X (stylized) (U.S. Serial No. 98496706) and NAILS-X (U.S. Serial No. 98496668), claiming various Class 3 nail care products that were the same or substantially the same goods covered by the Aprés Registrations. The owner of record for the registrations is identified as Tony Tuan Duong.

44. On September 9, 2024, Duong filed additional applications for the marks EXTEND BUILDER (U.S. Serial No. 98739760), EXTEND GLUE (U.S. Serial No. 98739743), GEL-UP (U.S. Serial No. 98739755), and NAIL-X (U.S. Serial No. 98739717) for substantially the same Class 3 goods as the applications filed on April 12, 2024. The second set of applications again listed the owner of record as Tony Tuan Duong.

45. On September 17, 2024, Aprés Nail submitted Letters of Protest to the USPTO, objecting to the applications for EXTEND GLUE, NAIL-X, TIPS-X (stylized), and NAILS-X. The USPTO accepted and included the Letters of Protest in

the application records for EXTEND GLUE and NAIL-X on October 21, 2024 and into the application records for NAILS-X and TIPS-X (stylized) on October 22, 2024.

46.     On September 18, 2024, Aprés Nail sent cease-and-desist letters to Defendants, notifying them of their infringement and demanding that they immediately cease all use of the Aprés Marks.

47.     On September 30, 2024, Aprés Nail filed takedown requests with Shopify, an e-commerce platform that Defendants have used to operate one or more of their websites.

48.     On October 3, 2024, Shopify confirmed that it had taken down several product listings on the XNailSupply.com website operated by Defendants for violating Shopify's trademark infringement policy.

49.     On October 11, 2024, after Defendants ignored the first letters, Aprés Nail sent follow-up correspondence reiterating its demands. By that time, Shopify had already removed multiple infringing listings from Defendants' websites following Aprés Nail's enforcement complaints.

50.     On November 8, 2024, the USPTO issued trademark office actions rejecting the registration of Duong's application for the marks EXTEND BUILDER (U.S. Serial No. 98739760), EXTEND GLUE (U.S. Serial No. 98739743), NAIL-X (U.S. Serial No. 98739717), NAILS-X (U.S. Serial No. 98496668), and TIPS-X (stylized) (U.S. Serial No. 98496706) based on a likelihood of consumer confusion with the Aprés Registrations and Aprés Applications. Duong abandoned the EXTEND BUILDER, EXTEND GLUE, and TIPS-X (stylized) applications, declining to respond to the office actions. The NAIL-X and NAILS-X applications, however, are currently suspended due to the pending status of the Aprés Applications, which is standard USPTO practice.

51.     Aprés Nail sent numerous additional emails to Defendants, both directly and through numerous attorneys purporting to represent them, including emails where Aprés Nail referenced the USPTO's findings of likelihood of confusion and proposed

opportunities to discuss an amicable resolution. While Defendants made *some* modifications to remove infringing product listings, many others remain unchanged. Defendants have refused to engage in good-faith discussion over the activities that Aprés Nail considers infringing, and they persist in their infringement today.

52.    Defendants' actions are willful, calculated, and continuing. Defendants have built entire product lines around infringing and counterfeit designations in order to piggyback on Aprés Nail's goodwill, confuse consumers, and divert sales, while damaging Aprés Nail's reputation and business relationships.

**FIRST CLAIM FOR RELIEF**

*Registered Trademark Infringement – 15 U.S.C. § 1114*

(Against All Defendants)

53.    Aprés Nail re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

54.    Aprés Nail owns valid and enforceable rights in the Aprés Registrations.

55.    The trademarks covered by the Aprés Registrations are widely recognized and are associated exclusively with Aprés Nail's high-quality nail extension products.

56.    Without Aprés Nail's authorization, Defendants have used and are using in commerce designations that are identical to, or confusingly similar with, the Aprés Registrations.

57.    Defendants' use of these infringing designations in commerce in connection with nail care products is likely to cause confusion, mistake, or deception among consumers, distributors, and salons as to the source, affiliation, sponsorship, or approval of Defendants' goods.

58.    Defendants' infringement was and is willful, deliberate, and in bad faith. Defendants persisted in their infringing use after multiple cease-and-desist letters and repeated correspondence with Aprés Nail's counsel. Because Defendants used

4934-5944-7663

identical reproductions of trademarks covered by the Aprés Registrations in connection with competing products, their actions constitutes counterfeiting.

59.     The USPTO has already refused several of Defendants' trademark applications for NAILS-X (U.S. Serial No. 98496668), NAIL-X (U.S. Serial No. 98739717), TIPS-X (U.S. Serial No. 98496706), EXTEND GLUE (U.S. Serial No. 98739743), and EXTEND BUILDER (U.S. Serial No. 98739760) on the ground that they are confusingly similar to Aprés Nail's prior registrations, further confirming the likelihood of confusion and putting Defendants on notice of the infringement.

60.     As a direct and proximate result of Defendants' infringing conduct, Aprés Nail has suffered and will continue to suffer irreparable harm to its goodwill, brand reputation, and business relationships, as well as lost sales and market share.

61.     Aprés Nail is entitled to preliminary and permanent injunctive relief, an accounting of Defendants' profits, actual and statutory damages, treble damages for willfulness, and recovery of its reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF

*Unregistered Trademark and Trade Dress Infringement, False Association, and Unfair Competition – 15 U.S.C. § 1125(a)(1)(A)*

(Against All Defendants)

62.     Aprés Nail re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

63.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), prohibits any false designation of origin, false or misleading representation, or use of a name, word, symbol, device, or trade dress that is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of goods with another.

64.     Aprés Nail is a well-known and highly regarded brand in the professional nail care industry. Consumers recognize "Aprés Nail" and the Aprés Marks as pointing uniquely to Aprés Nail as the exclusive source of high-quality nail products..

16

4934-5944-7663

65.     Après Nail owns protectable common law rights in the unregistered trademarks and trade dress comprising the Après Common Law Marks, including the APRÉS NAIL word mark, widely used slogans such as "THE TIPS THAT REVOLUTIONIZED THE INDUSTRY" and "UPGRADE THE EXPERIENCE," and official social media identifiers such as @ApresNailOfficial. These unregistered marks have been used extensively in commerce, promoted nationwide, and have come to signify Après Nail as their source.

66.     Après Nail also owns protectable, nonfunctional unregistered trade dress in the distinctive EXTEND GEL® gold bottle, the packaging and layout of the GEL-X® kit, and the look and feel of Après Nail's website and digital branding. Through years of exclusive use, extensive promotion, and widespread consumer recognition, Après Nail's trade dress has acquired secondary meaning as identifying Après Nail.

67.     Defendants have engaged in willful and unlawful infringement and unfair competition by misappropriating Après Nail's goodwill, including by:

    a.     Embedding GEL-X, EXTEND GEL, and Après Nail's social media handles directly into their HTML code and metadata so that Defendants' websites appear in search results as "Après Nail";

    b.     Copying Après Nail's slogans and using them verbatim on their websites and marketing materials;

    c.     Imitating Après Nail's website branding, including headers, taglines, imagery, and overall digital presentation;

    d.     Selling products in gold bottles and GEL-X® kit layouts that mimic Après Nail's distinctive trade dress;

    e.     Adopting confusingly similar designations such as NAILS-X, NAIL-X, TIPS-X, EXTEND GLUE, and EXTEND BUILDER; and

    f.     Directly soliciting Après Nail's authorized distributors to switch to Defendants' infringing products, even after receiving multiple cease-and-desist letters and takedown actions.

17

68.  As shown below, Defendants also programmed the 21 Sweet website to display the APRÉS NAIL name and trademark as the title for the site in Google search results in a transparent attempt to deceive and mislead consumers searching for Aprés Nail's genuine goods into visiting Defendants' infringing sites instead:



69.  Defendants have no connection, authorization, or affiliation with Aprés Nail. Yet, by using Aprés Nail's name, slogans, trade dress, and website branding, Defendants created the false impression of such a connection, and consumers are likely to presume affiliation or sponsorship due to Aprés Nail's fame and prominence.

70.  Defendants' conduct creates a false designation of origin and a false or misleading impression of affiliation, connection, sponsorship, or approval with Aprés Nail, and is likely to cause confusion, mistake, and deception among consumers, distributors, and salons.

71.  Defendants' actions were and are intentional, willful, and in bad faith, undertaken to capitalize on Aprés Nail's goodwill, divert its customers, and unfairly compete in the marketplace.

72.  As a direct and proximate result of Defendants' unlawful conduct, Aprés Nail has suffered and will continue to suffer irreparable harm, including loss of reputation, dilution of goodwill, diversion of sales, and loss of market share.

73.  Aprés Nail is entitled to preliminary and permanent injunctive relief, disgorgement of Defendants' profits, actual and statutory damages, treble damages for willfulness, corrective advertising, and recovery of attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

4934-5944-7663

**THIRD CLAIM FOR RELIEF**

*Trademark Counterfeiting – 15 U.S.C. §§ 1116(d), 1117(b)*

(Against All Defendants)

74.    Aprés Nail re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

75.    Defendants engaged in the manufacture, distribution, and sale of counterfeit products bearing Aprés Nail's federally registered trademarks, including but not limited to PH BONDER®, which Defendants reproduced identically on competing nail products.

76.    These counterfeit uses are spurious marks that are identical with, or substantially indistinguishable from, Aprés Nail's registered trademarks, including PH BONDER® and EXTEND GEL®.

77.    Defendants intentionally used these counterfeit marks in commerce, with full knowledge of Aprés Nail's prior rights, to deceive consumers and divert sales away from Aprés Nail's genuine products.

78.    Defendants' conduct constitutes willful counterfeiting in violation of 15 U.S.C. § 1114(1) and entitles Aprés Nail to enhanced remedies under 15 U.S.C. § 1117(b) and (c), including statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, or three times Defendants' profits or Aprés Nail's damages, whichever is greater.

79.    Aprés Nail further seeks an order under 15 U.S.C. § 1116(d) directing the impoundment and destruction of all counterfeit goods, labels, packaging, and promotional materials in Defendants' possession, custody, or control.

**FOURTH CLAIM FOR RELIEF**

*Secondary Trademark Infringement Liability*

(Against All Defendants)

80.    Aprés Nail re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

4934-5944-7663

81.     Each Defendant is secondarily liable for trademark infringement because he or it knowingly induced, caused, encouraged, and materially contributed to the infringing acts of each other Defendant, as well as various distributors, salons, retailers, and affiliated entities who sold, displayed, and promoted Defendants' infringing products.

82.     Defendant Tony Duong is directly and personally liable for secondary infringement because he:

     a.     Orchestrated the creation and registration of multiple infringing marks in his own name, including NAILS-X, NAIL-X, TIPS-X, EXTEND GLUE, and EXTEND BUILDER;

     b.     Controlled the design, content, and marketing of Defendants' infringing websites (including 21SweetBeauty.com and XNailSupply.com) and directed the deceptive embedding of "Après Nail" in website code;

     c.     Personally solicited Après Nail's distributors by text message to push infringing products; and

     d.     Continued directing these infringing activities even after receiving multiple cease-and-desist letters and enforcement notices from Après Nail's counsel.

83.     Defendants operated in concert, shared addresses and resources, and exercised the right and ability to supervise the infringing conduct, deriving direct financial benefit therefrom.

84.     On information and belief, Defendants' infringing operations would not have continued without Duong's active supervision, control, and direction, such that his individual liability is warranted under theories of contributory and vicarious infringement.

85.     As a direct and proximate result, Après Nail has suffered irreparable harm, including diversion of business, loss of goodwill, and damage to reputation.

4934-5944-7663

86. Aprés Nail is entitled to preliminary and permanent injunctive relief, Defendants' profits, compensatory damages, enhanced damages for willfulness, and attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF

*California Unfair Competition – Cal. Bus. & Prof. Code §§ 17200 et seq.*

(Against All Defendants)

87. Aprés Nail re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

88. Defendants have engaged in unlawful, unfair, and fraudulent business acts and practices in violation of California Business and Professions Code §§ 17200 *et seq.*, including but not limited to:

a. Unlawful conduct, namely, infringing Aprés Nail's federally registered trademarks, misappropriating its trade dress, and engaging in false designation of origin and false advertising in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125, and false advertising in violation of Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

b. Unfair conduct, namely, engaging in immoral, unethical, and unscrupulous practices that harm competition by deliberately copying Aprés Nail's branding, packaging, and trademarks to confuse and divert consumers, and by embedding "Aprés Nail" in HTML source code to mislead search engines and searchers; and

c. Fraudulent conduct, namely, creating and disseminating deceptive website titles, headers, and product listings falsely suggesting affiliation with Aprés Nail, which are likely to deceive members of the public and business partners.

89. Defendants persisted in this unlawful, unfair, and fraudulent conduct after repeated notice, multiple cease-and-desist letters, follow-up correspondence with Defendants' attorneys, and post-notice Shopify takedowns of infringing listings.

21

Defendants' continued infringement evidences willfulness and the ongoing nature of their unfair business practices.

90.    As a direct and proximate result, Aprés Nail has suffered and will continue to suffer economic injury, diversion of sales, and loss of goodwill.

91.    Pursuant to Cal. Bus. & Prof. Code § 17203, Aprés Nail seeks restitution and/or disgorgement of all monies wrongfully obtained by Defendants, a permanent injunction prohibiting further unlawful acts, and such additional relief as the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

*Common-Law Trademark Infringement and Unfair Competition*

(Against All Defendants)

92.    Aprés Nail re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

93.    Aprés Nail owns valid and protectable rights in the Aprés Marks, including its trademarks, trade dress, and distinctive product designs, which serve to identify Aprés Nail as the source of high-quality nail care products and related goods.

94.    Since at least as early as 2015, Aprés Nail has continuously and extensively used the Aprés Marks in commerce in connection with nail care products, services, and related goods. Through these activities, Aprés Nail has built substantial goodwill, consumer recognition, and a reputation for quality in the marketplace.

95.    Defendants, without authorization or consent, have used in commerce marks, trade dress, and product designs that are confusingly similar to the Aprés Marks in connection with the advertising, promotion, marketing, sale, and distribution of Defendants' nail care products.

96.    Defendants' acts are likely to cause—and have caused—confusion, mistake, or deception among the consuming public as to the affiliation, connection, or association of Defendants with Aprés Nail, and as to the origin, sponsorship, or approval of Defendants' goods.

22

97.    Defendants' conduct constitutes common-law trademark infringement and unfair competition under the laws of the State of California.

98.    As a direct and proximate result of Defendants' wrongful acts, Aprés Nail has suffered and will continue to suffer irreparable injury, including but not limited to loss of goodwill, damage to its reputation, diversion of sales, and diminution in the value of its marks and brand.

99.    Unless enjoined, Defendants' conduct will continue to cause irreparable harm to Aprés Nail for which it has no adequate remedy at law.

100.    In addition, as a direct and proximate result of Defendants' wrongful acts, Aprés Nail has suffered and will continue to suffer substantial monetary damages in an amount to be proven at trial, including lost profits, unjust enrichment, and other compensatory damages, and Aprés Nail is entitled to punitive and exemplary damages under California law based on Defendants' willful, fraudulent, and malicious conduct.

## SEVENTH CLAIM FOR RELIEF

*False Advertising – 15 U.S.C. § 1125(a)(1)(B)*

(Against All Defendants)

101.    Aprés Nail re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

102.    Defendants have made false and misleading statements of fact and misleading representations and designations of origin about the nature, quality, sponsorship, and source of their products in commercial advertising and promotion. Specifically, but without limitation, Defendants:

   a.    Used "Aprés Nail" as a website description in HTML source code, causing Google search results to list Defendants' sites under the "Aprés Nail" page title;

   b.    Presented Aprés Nail's marks in page headers, metadata, and product categories to falsely suggest their goods are Aprés Nail's or are affiliated with Aprés Nail;

23

4934-5944-7663

     c.     Marketed and sold products in packaging that mimics Aprés Nail's distinctive trade dress, further reinforcing the false impression of authenticity and affiliation; and

     d.     Misrepresented the nature and quality of their products, including by claiming they are of the same high quality as Aprés Nail's goods.

103.   These false and misleading representations were material and likely to influence the purchasing decisions of salons, distributors, and consumers seeking Aprés Nail's genuine goods.

104.   The statements and advertising were disseminated in interstate commerce through Defendants' commercial websites and marketing channels, reaching customers in this District and nationwide.

105.   As a result of Defendants' false advertising, Aprés Nail has suffered actual injury, including lost sales, diverted customers, competitive harm, and reputational damage.

106.   Defendants' conduct was knowing, willful, and undertaken with intent to mislead the public.

107.   Aprés Nail is entitled to preliminary and permanent injunctive relief, disgorgement of Defendants' profits, damages including corrective advertising, treble damages for willfulness, and attorneys' fees and costs pursuant to 15 U.S.C. § 1117.

**EIGHTH CLAIM FOR RELIEF**

*California False Advertising – Bus. & Prof. Code §§ 17500 et seq.*

(Against All Defendants)

108.   Aprés Nail re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

109.   Defendants made and disseminated untrue and misleading statements and representations of fact in connection with the advertising and promotion of their nail

24

4934-5944-7663

products in violation of California Business and Professions Code §§ 17500 *et seq.*, including but not limited to:

a.      Using "Aprés Nail" as the page title for Defendants' website in Google search results by embedding it in HTML source code;

b.      Presenting the Aprés Marks in page headers, metadata, and product categories as if they were Defendants' own designations;

c.      Using confusingly similar marks such as NAILS-X, NAIL-X, EXTEND GLUE, and EXTEND BUILDER in product listings, misleading consumers into believing the goods originated with or were approved by Aprés Nail;

d.      Packaging and marketing infringing products in bottles and kits designed to mimic Aprés Nail's EXTEND GEL® and GEL-X® trade dress; and

e.      Misrepresenting the nature and quality of their products, including by claiming they are of the same high quality as Aprés Nail's goods.

110.   These representations were false and misleading, and Defendants knew or should have known they were untrue when disseminating them.

111.   The false and misleading advertising was material, was disseminated broadly in interstate commerce through Defendants' websites and sales channels, and was likely to deceive—and did deceive—salons, distributors, and consumers about the source, sponsorship, affiliation, and approval of Defendants' products.

112.   As a result, Aprés Nail has suffered economic injury, including diverted sales, diminished goodwill, and reputational harm.

113.   Pursuant to Cal. Bus. & Prof. Code § 17535, Aprés Nail seeks preliminary and permanent injunctive relief barring further false advertising and restitution of all profits and benefits unjustly obtained by Defendants.

4934-5944-7663

## NINTH CLAIM FOR RELIEF

*Civil Conspiracy*

(Against All Defendants)

114.    Aprés Nail re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

115.    Defendants knowingly agreed and conspired with one another to engage in unlawful acts, including infringement of the Aprés Marks, copying of its trade dress, false advertising, and counterfeiting.

116.    In furtherance of this conspiracy, Defendants committed overt acts including but not limited to:

    a.    Filing infringing trademark applications in Duong's name;

    b.    Launching commercial websites and product listings under confusingly similar marks (including NAILS-X, NAIL-X, EXTEND GLUE, and EXTEND BUILDER);

    c.    Embedding Aprés Nail's marks into HTML metadata and website headers to divert consumer traffic;

    d.    Cross-linking and cross-promoting their infringing websites (including 21SweetBeauty.com, Nails-X.com, and XNailSupply.com) and using coordinated social media accounts to drive traffic among these sites to reinforce the false impression that Defendants' products and online presence are affiliated with Aprés Nail; and

    e.    Directly soliciting Aprés Nail's distributors to purchase infringing and counterfeit products.

117.    Each Defendant aided, abetted, and ratified the infringing and fraudulent acts of the others, and each is therefore jointly and severally liable for the unlawful conduct alleged herein.

4934-5944-7663

118.   As a direct and proximate result of Defendants' conspiracy, Aprés Nail has suffered and will continue to suffer substantial damages, including lost sales, injury to goodwill, and reputational harm.

119.   Aprés Nail seeks compensatory damages, punitive damages, disgorgement of Defendants' unlawful profits, preliminary and permanent injunctive relief prohibiting further conspiratorial acts, and such other relief as the Court deems just and proper.

## TENTH CLAIM FOR RELIEF

*Cancellation of Trademark Registration – 15 U.S.C. § 1119*

(Against Duong)

120.   Aprés Nail realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

121.   Section 37 of the Lanham Act, 15 U.S.C. § 1119, authorizes a federal district court to order the cancellation of a registration obtained in violation of the Act or through fraud on the USPTO.

122.   On September 9, 2024, Duong filed an application with the USPTO to register the mark GEL-UP (U.S. Serial No. 98739755) for nail care products in International Class 3 (the "**GEL-UP Application**"). The goods identified in that application are identical or substantially identical to those sold by Aprés Nail under its distinctive GEL-X® mark and covered by its registrations for the GEL-X® mark.

123.   On March 24, 2025, the USPTO issued a Non-Final Office Action to the GEL-UP Application, rejecting the specimen of use submitted with the application for failure to demonstrate current use in commerce.

124.   On June 24, 2025—the deadline for Duong to file a response—Duong submitted to the USPTO a Response to Office Action that included a substitute specimen, along with signed declaration made under penalty of 18 U.S.C. § 1001. In that declaration, Duong averred that:

      a.      He was the owner of the mark sought to be registered;

27

b.     The mark was in use in commerce as of the application filing date;

c.     The substitute specimen showed the mark in use in commerce as of the application filing date; and

d.     To the best of his knowledge and belief, no other person had the right to use the mark in commerce in such near resemblance as to be likely to cause confusion, mistake, or deception.

125.   Each of the statements in subparagraphs (a)–(d) above was materially false when made and was intended to induce the USPTO to approve the application and issue a registration.

126.   First, on information and belief, when Duong filed the GEL-UP Application, he was not the lawful owner of any trademark rights in the GEL-UP trademark. On information and belief, Duong's affiliated entity, Nail Up, was the entity actually selling nail-care products associated with GEL-UP, and Duong's personal claim of ownership was knowingly false.

127.   Second, the GEL-UP mark was not in *bona fide* use in commerce as of September 9, 2024. The original and substitute specimens did not depict actual use on goods sold or transported in commerce on or before that date. Rather, on information and belief, the specimen was fabricated months later for the purpose of misleading the USPTO.

128.   Third, Duong knew that another company, Aprés Nail, already had well-established, nationwide rights in the GEL-X® mark for the exact same category of nail products. Given all of the other instances of willful infringement by Doung and his affiliated entities, including but not limited to infringement of Aprés Nail's other registered marks, copying Aprés Nail's trade dress, copying aspects of Aprés Nail's website and linking its website to Aprés Nail's name and trademark in online search results, Duong's registration of GEL-UP is another attempt to associate himself and his affiliated entities with Aprés Nail's reputation and goodwill.

4934-5944-7663

129.   Despite this knowledge, Duong declared that "no other persons … have the right to use the mark in commerce … in such near resemblance as to be likely … to cause confusion or mistake, or to deceive." That statement was knowingly false and material to the USPTO's decision to approve the application.

130.   Duong made the false statements described above knowingly, deliberately, and with the specific intent to deceive the USPTO and to secure a registration to which he was not entitled. The USPTO reasonably relied on those false representations and, as a direct result, issued U.S. Registration No. 7,943,753 for the mark GEL-UP.

131.   Because the GEL-UP registration was procured by knowingly false and material misrepresentations, it is void *ab initio* and should be cancelled pursuant to 15 U.S.C. § 1119.

132.   Aprés Nail has suffered, and will continue to suffer, irreparable harm unless the registration is cancelled.

### PRAYER FOR RELIEF

WHEREFORE, Aprés Nail respectfully requests that this Court enter judgment in its favor and against Defendants, jointly and severally, and grant the following relief:

1.     Preliminarily and permanently enjoin Defendants, their officers, agents, servants, employees, attorneys, and all persons acting in concert with them from:

(a)     using in commerce the Aprés Marks (including GEL-X®, PH BONDER®, EXTEND GEL®, APRÉS®, BRUSH-X®, and MANIPEDI BY APRÉS®), or any confusingly similar designations, including but not limited to TIPS-X, NAILS-X, NAIL-X, EXTEND BUILDER, EXTEND GLUE, and GEL-UP;

29

(b)    imitating or copying Après Nail's distinctive trade dress (including its EXTEND GEL® gold bottle, GEL-X® kit packaging, and website branding);

(c)    embedding Après Nail's marks or trade name in any website code, advertising, or metadata; and

(d)    engaging in any acts of counterfeiting, infringement, false designation of origin, false advertising, unfair competition, or conspiracy with respect to Après Nail's name, trademarks, trade dress, or goodwill.

2.    Order cancellation of Defendants' issued federal registration for GEL-UP (U.S. Reg. No. 7943753) and enjoin Defendants from pursuing or maintaining any applications for the TIPS-X, NAILS-X, NAIL-X, EXTEND BUILDER, EXTEND GLUE, or GEL-UP marks.

3.    Impound during the pendency of this action, and destroy following judgment, all infringing and counterfeit products, labels, packaging, advertisements, and promotional materials in Defendants' possession, custody, or control pursuant to 15 U.S.C. §§ 1116 and 1118.

4.    Direct Defendants to recall from the marketplace all counterfeit and infringing goods bearing Après Nail's marks or trade dress.

5.    Require Defendants to provide an accounting and disgorgement of all profits earned from their unlawful acts.

6.    Order Defendants to file with the Court and serve on Après Nail, within 30 days after entry of any injunction, a report in compliance with 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendants have complied with the injunction.

4934-5944-7663

7.      Order the transfer to Aprés Nail of any inventory, labels, packaging, plates, molds, and advertisement materials bearing infringing or counterfeit marks for destruction pursuant to 15 U.S.C. § 1118.

8.      Award Aprés Nail damages, including: (a) actual damages in an amount to be proven at trial; (b) statutory damages for willful counterfeiting under 15 U.S.C. § 1117(c), up to $2,000,000 per counterfeit mark per type of goods sold; (c) treble damages under 15 U.S.C. § 1117(b) for intentional use of counterfeit marks; (d) damages for corrective advertising to dispel consumer confusion; (e) restitution of all monies wrongfully obtained as authorized by Cal. Bus. & Prof. Code §§ 17203 and 17535; and (f) punitive and exemplary damages for Defendants' common-law trademark infringement and unfair competition, based on the willful, fraudulent, and malicious nature of Defendants' conduct.

9.      Impose a constructive trust over Defendants' ill-gotten gains for the benefit of Aprés Nail.

10.      Award Aprés Nail its reasonable attorneys' fees, costs, and expenses pursuant to 15 U.S.C. § 1117(a) and California law.

11.      Award Aprés Nail pre-judgment and post-judgment interest at the maximum rate permitted by law.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

4934-5944-7663

12.    Grant such other and further relief as the Court deems just and proper.

Dated:  October 15, 2025        PILLSBURY WINTHROP SHAW PITTMAN LLP


                                */s/ Carolyn S. Toto*
                        By:    CAROLYN S. TOTO
                               JEFFREY D. WEXLER
                               JON JEKEL
                               *Attorneys for Plaintiff*
                               Applied Lacquer Industries Inc. d/b/a Aprés Nail


## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Aprés Nail demands trial by jury on all issues so triable.


Dated:  October 15, 2025        PILLSBURY WINTHROP SHAW PITTMAN LLP


                                */s/ Carolyn S. Toto*
                        By:    CAROLYN S. TOTO
                               JEFFREY D. WEXLER
                               JON JEKEL
                               *Attorneys for Plaintiff*
                               Applied Lacquer Industries Inc. d/b/a Aprés Nail

32

4934-5944-7663